# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMANDA BOULDEN, )<br>)<br>    Plaintiff, )<br>)<br>    v. )<br>)<br>COLONIAL GARDENS APARTMENTS, )<br>LLC, a Delaware limited liability company; )<br>and CLK MULTIFAMILY )<br>MANAGEMENT, LLC, a Delaware limited )<br>liability company, )<br>)<br>    Defendants. ) | Civil Action No. 21-1112-CJB |

Raj Srivatsan, THE IGWE FIRM, Wilmington, DE; Michael G. Mann, THE COCHRAN FIRM ORLANDO, LLC, Orlando, FL; Attorneys for Plaintiff.

Dean R. Roland, COOCH AND TAYLOR, P.A., Wilmington, DE; Marc B. Zingarini and Carolyn A. Williams, BBC LAW, LLP, Philadelphia, PA; Attorneys for Defendants.

## MEMORANDUM OPINION

August 27, 2024
Wilmington, Delaware

**BURKE, United States Magistrate Judge**

    Presently pending before the Court in this civil matter is a motion for partial summary judgment ("Motion") filed by Defendants Colonial Gardens Apartments, LLC ("Colonial Gardens") and CLK Multifamily Management, LLC ("CLK," and with Colonial Gardens, collectively "Defendants"), (D.I. 53), pursuant to Federal Rule of Civil Procedure 56. The Motion is opposed by Plaintiff Amanda Boulden ("Boulden" or "Plaintiff").

For the reasons set forth below, the Motion is GRANTED-IN-PART and DENIED-IN-PART.[1]

I. BACKGROUND

Plaintiff commenced this action on July 30, 2021. (D.I. 1) In her Complaint, Plaintiff alleges that from January 2019 to January 2020, she rented an apartment in Newark, Delaware, in an apartment complex owned by Colonial Gardens and managed by CLK. (D.I. 1 at ¶¶ 2, 4, 7, 38)[2] She asserts that as of May 2019, her apartment was infested by bed bugs, and that this caused various forms of damage to her. (*Id.* at ¶¶ 7-39) Among these damages were bed bug bites, property damage directly related to the infestation, sleepless nights, and diagnoses of anxiety and panic attacks. (*Id.* at ¶¶ 24-28, 37, 54-75)

Defendants filed the instant Motion on July 10, 2023. (D.I. 53) The Motion was fully briefed as of July 31, 2023. (D.I. 58)

As the Court writes primarily for the parties here, any further facts relevant to this Memorandum Opinion will be discussed in Section III below.

II. STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585

---

[1] The parties have jointly consented to the Court's jurisdiction to conduct all proceedings in this case, including trial, the entry of final judgment and all post-trial proceedings. (D.I. 46)

[2] The parties cite to very few materials of record in their briefing. And so the Court will occasionally cite to the operative complaint in explaining basic background relating to the Motion.

2

n.10 (1986).  If the moving party has sufficiently demonstrated the absence of such a dispute, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Id.* at 587 (internal quotation marks, citation and emphasis omitted).  If the nonmoving party fails to make a sufficient showing in this regard, then the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  During this process, the Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

However, in order to defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.  The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).  Facts that could alter the outcome are "material," and a factual dispute is "genuine," only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.  "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id.* at 249-50 (internal citations omitted).

A party asserting that a fact cannot be—or, alternatively, asserting that a fact is—genuinely disputed must support the assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or by "showing that the materials cited do not

establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).

## III.   DISCUSSION

In her Complaint, Plaintiff includes six counts: Negligence (Count I), Negligent Infliction of Emotional Distress (Count II), Intentional Infliction of Emotional Distress (Count III), Fraudulent Concealment (Count IV), Battery (Count V) and Vicarious Liability (Count VI). (D.I. 1 at ¶¶ 40-109)  With their Motion, Defendants challenge Counts I, II and III. (D.I. 54 at 2-3, 5-10)  The Court will address the challenge to Count I first, and then will take up the challenge to Counts II and III.

### A.   Count I

Count I is a claim for negligence, which (as with all of the claims here) is brought pursuant to Delaware law. In order to establish a negligence claim under Delaware law, a plaintiff must show that: (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached that duty; and (3) the defendant's breach was the proximate cause of the plaintiff's injury. *Pipher v. Parsell*, 930 A.2d 890, 892 (Del. 2007). In her Complaint, Plaintiff alleged that: (1) Defendants, as the owner/operator of the apartment complex at issue, owed her a duty to exercise reasonable care to help her avoid personal injury and to warn her of any dangerous conditions in her apartment; (2) Defendants breached that duty by failing to take various actions that either led to or perpetuated the bed bug infestation; and (3) as a result, Plaintiff suffered injuries, including pain from bed bug bites, mental and emotional anguish, property damage and loss of funds. (D.I. 1 at ¶¶ 24-28, 37, 39-53)

Defendants' argument for summary judgment as to Count I is that, under the circumstances here, Plaintiff needed to submit an expert's opinion in order to establish that

Defendants breached the standard of care applicable to landlords and property managers relating to bed bug infestation; because Plaintiff does not have any expert testimony to this effect, Defendants argue that her negligence claim must fail. (D.I. 54 at 5-8) The Court cannot agree.

In addressing what quantum of evidence is needed to satisfy the law (i.e., whether expert testimony is absolutely required on this question), the parties cited exclusively to Delaware state law, which the Court will apply below.[3] The briefing on this issue was somewhat sparse. But from what the Court can discern, Delaware state law does not indicate that expert testimony is required in *all instances* in order to prove that a landlord or property manager was negligent or breached a duty of care.

On the one hand, Delaware courts have noted that if a local code or statute addresses the landlord/property manager's conduct at issue and makes clear that the conduct is in compliance with that code/statute—but the plaintiff is nevertheless asserting that the conduct still amounts to negligence—then expert testimony is needed in this situation, in order to demonstrate that a community's local standard of care was higher than the standard of care required by the applicable code/statute. *See, e.g.*, *Cruz v. G-Town Partners, L.P.*, C.A. No. 09C-08-218 RRC, 2010 WL 5297161, at *14 (Del. Super. Ct. Dec. 3, 2010); *Vandiest v. Santiago*, No. Civ.A.02C-06-003 WLW, 2004 WL 3030014, at *7 (Del. Super. Ct. Dec. 9, 2004); *Norfleet v. Mid-Atl. Realty Co.*, No. Civ.A 95C-11-008WLW, 2001 WL 695547, at *5-6 (Del. Super. Ct. Apr. 20,

---

[3] The parties appear to agree that in this federal diversity jurisdiction case, Delaware state law controls on the question of whether expert testimony is needed in order to prove certain claims at issue (in that the parties cite only to Delaware state law on this topic in their briefing). The Court will therefore look to Delaware caselaw on this issue in assessing what the law requires. *See Marino v. Brighton Gardens of Mountainside*, 697 F. Supp. 3d 224, 237 (D.N.J. 2023) (citing cases); *see also Henderson v. Boston Sci. Corp.*, Civil Action No. 3:20cv659, 2021 WL 3465074, at *3 (E.D. Va. Aug. 6, 2021).

2001). That is because, in such a circumstance, it would be beyond the ken of the lay juror to discern what the local standard of care is and whether the conduct (even though it was within the confines of the applicable code/statute) breached that standard. *See Vandiest*, 2004 WL 3030014, at *7. Delaware courts have also appeared to hold that there are some other types of negligence claims regarding a landlord/property manager's work that require the provision of expert testimony—simply because the subject matter at issue is so complicated that a lay juror would struggle to understand what goes into determining whether the standard of care has been met (or to otherwise process the technical evidence at issue). *See, e.g., Cruz*, 2010 WL 5297161, at *14-15; *Campbell v. DiSabatino*, C.A. No. 02C-10-081 RRC, 2007 WL 1334947, at *2-3 (Del. Super. Ct. May 2, 2007).

On the other hand, Delaware courts have held that plaintiffs do not necessarily *always* need expert testimony to establish negligence in this context—at least in those cases where there is no assertion that the applicable standard of care is more rigorous than what is permitted by code or statute. *Vandiest*, 2004 WL 3030014, at *7; *Small v. Super Fresh Food Mkts., Inc.*, C.A. No. 07C-12-095 RRC, 2010 WL 530071, at *3 (Del. Super. Ct. Feb. 12, 2010). In such cases—and where the negligence claim at issue involves evidence that is not too difficult to comprehend (e.g., as to the proper maintenance of a loose handrail or a faulty doorframe, or about the import of a hole or crack in a ramp, or regarding whether a leaky pipe needs to be repaired or replaced)—lay jurors can make a determination about whether a landlord/property manager was negligent without necessarily needing an expert's help. *See, e.g., Torrent Pharma, Inc. v. Priority Healthcare Distrib., Inc.*, C.A. No. N18C-05-094 CEB, 2022 WL 3272421, at *19 (Del.

Super. Ct. Aug. 11, 2022); *Yancy v. Tri State Mall Ltd. P'ship*, C.A. No: N11C–06–127 CLS, 2014 WL 2538805, at *3-4 (Del. Super. Ct. May 29, 2014); *Vandiest*, 2004 WL 3030014, at *7.[4]

In this case, we do not have a situation where Defendants are asserting that a relevant code/statute explicitly permitted the conduct at issue as to bed bug monitoring or prevention (and where Plaintiff is nevertheless arguing that the relevant standard of care required *more* than what the code/statute sanctioned). And Plaintiff otherwise asserts that bed bug infestation is not the type of subject matter where one needs to be an expert in order to determine that something has gone off the rails. (D.I. 57 at 4-6 ("This case is about bed bugs, not rocket science."))[5] The Court is not persuaded that Plaintiff's position is incorrect.[6]

For this reason, the Court DENIES Defendants' Motion as to Count I.

### B.   Counts II and III

Count II is a claim for negligent infliction of emotional distress, and Count III is a claim for intentional infliction of emotional distress. Plaintiff alleges that Defendants' conduct at issue

---

[4]   *See also Alcantara v. Cavalier Grp., Inc.*, C.A. No. N18C-06-147 ALR, 2019 WL 4187542, at *3 (Del. Super. Ct. Aug. 23, 2019); *Panansewicz v. Jennings*, C.A. No. N12C-07-117 CLS, 2014 WL 1270014, at *3 (Del. Super. Ct. Jan. 27, 2014).

[5]   Plaintiff's briefing did not come with page numbers, so the Court will cite herein to the ECF-generated page numbers for the filing.

[6]   Defendants also cite to Delaware caselaw for the proposition that a breach of the landlord/tenant code does not give rise to tort liability unless the section of the code violated requires a definite act or sets a specific standard of conduct. (D.I. 54 at 6 (citing *Miley v. Harmony Mill Ltd. P'ship*, 803 F. Supp. 965, 970 (D. Del. 1992)); D.I. 58 at 2 (same)) But in her answering brief, Plaintiff appears to indicate that her claim *is* premised, at least in part, on the assertion that Defendants violated a specific standard of conduct that is set out in 25 Del. Code § 5317(a), which, *inter alia*, requires that the owner or property manager of a unit may not rent a unit if it knows or reasonably suspects that the unit has a current bed bug infestation. 25 Del. Code § 5317(a) (*cited in* D.I. 57 at 4; *see also* (D.I. 1 at ¶¶ 30-31)).

7

caused her to suffer emotional distress, which manifested in sleepless nights and diagnoses of anxiety and panic attacks. (D.I. 1 at ¶¶ 24-28, 54-75) Defendants challenge both counts here.

With regard to a claim for negligent infliction of emotional distress, Delaware courts have explained that there are three elements: "(1) negligence causing fright to someone; (2) that the plaintiff was within the 'zone of danger'; and (3) that the plaintiff suffered physical harm as a result." *Spence v. Cherian*, 135 A.3d 1282, 1289-90 (Del. Super. Ct. 2016) (citation omitted). As for a claim for intentional infliction of emotional distress, pursuant to Delaware law, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Goode v. Bayhealth Med. Ctr., Inc.*, 931 A.2d 437, 2007 WL 2050761, at *2 (Del. July 18, 2007) (internal quotation marks and citation omitted).[7]

Defendants' argument as to why summary judgment should be granted as to Count II and its primary argument for summary judgement as to Count III is that, pursuant to Delaware law regarding these types of claims, medical expert testimony is required to demonstrate that the physical or mental injury at issue was proximately caused by a defendant's conduct. (D.I. 54 at 8, 10; D.I. 58 at 5) Because Plaintiff does not put forward any such expert testimony, Defendants argue that summary judgment is warranted. Relatedly, with regard to Plaintiff's alleged emotional distress, Defendants point to various portions of the record indicating that the

---

[7]   For this type of claim, a plaintiff must establish that "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community" such that "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Mattern v. Hudson*, 532 A.2d 85, 86 (Del. Super. Ct. 1987) (internal quotation marks and citation omitted). "[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" are not enough to rise to this level. *Id.* (citation omitted).

8

harm Plaintiff reports could have been caused by sources other than the May 2019 bed bug infestation. (D.I. 58 at 4-5) To that end, Defendants cite to:

- Plaintiff's testimony that she was first prescribed medication for anxiety in late 2021 at a time when she was having difficulties in her relationship with her sister, which would have been over two years from the bed bug incident described in her Complaint. (D.I. 58, ex. A at 185-88)

- Plaintiff's testimony that she first experienced panic attacks when she was learning to drive. (*Id.* at 205-06)

- Plaintiff's medical records, which indicate that in the past (and in some instances, prior to the incident described in the Complaint), Plaintiff suffered from depression, anxiety and related symptoms, and that such symptoms were at times prompted by issues other than (or in addition to) the bed bug infestation. (*Id.*, ex. B)

- Testimony from Plaintiff's mother that Plaintiff had anxiety when learning to drive while in high school and also when learning to drive in 2019. (*Id.*, ex. C at 26)

Delaware law indicates that as to claims of negligent or intentional infliction of emotional distress like those in Counts II and III, "'where the medical question as to proximate cause is complicated and carries the fact finder into realms properly within the province of medical experts, then expert medical testimony is necessary to establish proximate cause between an act and an injury.'" *Collins v. Afr. Methodist Episcopal Zion Church*, C.A. No. 04C-02-121, 2006 WL 1579718, at *4 (Del. Super. Ct. Mar. 31, 2006) (citation omitted); *see also Ciabattoni v. Teamsters Loc. 326*, Case No.: N15C-04-059 VLM, 2020 WL 4331344, at *5 (Del. Super. Ct. July 27, 2020) ("Delaware case law generally holds that medical expert testimony is necessary to establish that emotional distress was proximately caused by the actions of the Defendant."); *Doe v. Wildey*, C.A. No. 09C-06-262 MJB, 2012 WL 1408879, at *5-7 (Del. Super. Ct. Mar. 29, 2012). In such cases, where the plaintiff had pre-existing medical conditions that could have

caused the injuries claimed in the suit, Delaware courts have required the testimony of a medical expert in order to establish the relevant causal nexus between the asserted misconduct and the claimed injuries. *See, e.g.*, *Collins*, 2006 WL 1579718, at *4 (finding at the summary judgment stage that because the plaintiff alleging negligent infliction of emotional distress had a pre-existing neurological disorder and had experienced prior domestic violence and trauma, and because the plaintiff's alleged injuries (headaches, emotional distress, depression, stroke and slurred speech) could have been caused by those prior events, the injuries were not obviously related to the alleged harassing actions of the defendant, and so a medical expert was needed to establish the required causal nexus); *Doe*, 2012 WL 1408879, at *1-2, *7 (concluding the same, where the plaintiffs claimed to have suffered emotional distress due to the defendant's sexually abusive conduct, but where the plaintiffs had also endured a host of other traumatic experiences in their lives prior to and during the relevant time span, which could also have caused the conditions at issue); *see also Rodriguez v. Cahall*, Case No.: N20C-01-201 FJJ, 2023 WL 569358, at *5 (Del. Super. Ct. Jan. 27, 2023) (granting summary judgment on an intentional infliction of emotional distress count because the plaintiff had not produced any medical expert testimony in support of his claim); *cf. Przywara v. Kenny*, No. C.A. CPU4-15-001829, 2016 WL 916578, at *3 (Del. Ct. of Common Pleas Mar. 6, 2016) (concluding that summary judgment should be granted to the defendants as to a plaintiff's negligence claim, where the plaintiff previously had established mental illness, years of psychological treatment and prior suicide attempts, and where a layperson could not determine without expert assistance whether those prior conditions or the defendants' act of disclosing the plaintiff's medical records were the

cause of plaintiff's alleged injuries (including PTSD relapse, severe anxiety attacks and extreme weight loss)).[8]

In this case, Plaintiff is alleging that the bed bug exposure she experienced is what led to the emotional distress she suffered in May 2019 and thereafter, as described in Counts II and III (i.e., taking the form of sleepless nights, anxiety and panic attacks). (D.I. 1 at ¶¶ 56, 60-61, 67, 69, 73-74) And yet, in light of Plaintiff's prior history of anxiety, panic attacks and depression, the jury would be asked to discern whether the emotional distress that Plaintiff suffered in this time period was caused by: (a) the bed bug infestation/bed bug bites; or (b) the other incidents in Plaintiff's life that had manifested in anxiety, panic attacks and depression; or (c) some of both. In line with the caselaw cited above, that kind of complicated causation question is one where the jury would necessarily require the help of a medical expert witness to figure out the answer (and to grant relief to Plaintiff, if warranted). Because Plaintiff has not put forward any such medical expert testimony, the Court GRANTS summary judgment to Defendants as to Plaintiff's claims in Counts II and III.[9]

## IV.   CONCLUSION

---

[8] In contrast, in cases where determining causation of a claimed injury regarding an emotional distress claim would not necessarily be beyond the ken of a lay juror, Delaware courts have permitted a plaintiff to attempt to make that causal connection without relying on expert witness testimony. *See Taylor S ex rel. Margaret F. S v. Hann-Deschaine*, C.A. No. K11C-01-014 JTV, 2012 WL 6849328, at *1 (Del. Super. Ct. Nov. 28, 2012) (noting that the court had concluded that expert testimony was not *per se* required, as a matter of law, in all cases alleging intentional infliction of emotional distress, and that where the acts at issue were alleged sexual abuse of a child, and the injuries at issue stemmed from the unlawful contact with the child's person, expert testimony was not required to make out a claim, since proof of the unlawful sexual contact would itself be proof of the injury); *see also* (D.I. 57 at 7).

[9] In light of the Court's decision here, it need not address Defendant's apparent additional argument relating to Count III: i.e., that any conduct at issue was not sufficiently "extreme or outrageous" to make out a claim. (D.I. 54 at 8-10)

For the foregoing reasons, the Court finds that Defendants' Motion is GRANTED-IN-PART and DENIED-IN-PART, in that the Motion is DENIED as to Count I and GRANTED as to Counts II and III.  An appropriate Order will issue.